

**Randolph J. Haines, Chief Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| IAN NEHEMIAH GRAY and | ) | Case No. 3:13-bk-08071-RJH |
| CYNTHIA JACKSON GRAY, | ) | |
| | ) | OPINION AND ORDER SUSTAINING |
| Debtors. | ) | TRUSTEE'S OBJECTION TO CLAIMED |
| | ) | EXEMPTIONS |

Trustee objects, on grounds of bad faith, to the Debtors' amended claim to exempt prepaid rent in the amount of $900. The Court finds bad faith and sustains the objection.

**Factual Background**

Debtors filed this Chapter 7 case on May 14, 2013, and filed their Schedules that same day. Schedule B reflected personal property worth $900 consisting of a "Security Deposit with Landlord," and Schedule C claimed that asset as exempt pursuant to Arizona law.[1] Neither Schedule reflected or claimed as exempt any prepaid rent other than the security deposit.

After reviewing the Debtors' checkbook and bank statements, at the first meeting of creditors on June 24 the Trustee inquired about their payment of $2,707 made to their landlord on March 11, 2013. Debtors testified that that March payment was a prepayment of rent for the months of April, May and June, 2013. When on July 8 the Trustee demanded turnover of $900 reflecting the prepayment of the post-petition rent due for the month of June, the Debtors amended their Schedules B also to reflect, in addition to the $900 security deposit,

---

[1] Arizona Revised Statutes ("A.R.S.") § 33-1126(C) permits debtors who do not claim a homestead exemption to claim as exempt "prepaid rent, including security deposits . . . not exceeding the lesser of one thousand dollars or one and one-half months' rent." Pursuant to A.R.S. § 33-1121.01, these exempt amounts are doubled for married persons. Pursuant to A.R.S. § 33-1133(B), Arizona has "opted out" of the federal exemptions provided by the Bankruptcy Code.

an asset identified as "June prepaid rent" in the amount of $900. They also amended their Schedule C to claim that $900 of prepaid rent as exempt, in addition to the $900 security deposit. The Trustee objected to the amended exemption the next day. Debtors responded to the Trustee's objection, and the Court heard oral argument on the objection on August 27 and took the matter under advisement.

### Analysis

The Trustee's objection argues that "The debtors' failure to disclose the asset at the outset of this case is grounds for the denial of the exemption." Debtors respond that an amended claim of exemption may not be denied, solely because of delay or late filing, absent "a showing of a debtor's bad faith or of prejudice to creditors," citing the Ninth Circuit's holding in *Michael*.[2] They also argue that the Trustee has not made any showing of either bad faith or prejudice to creditors.

At oral argument, the Trustee, who represented himself *in pro per*, argued that Trustees should not be expected to ferret out undisclosed assets, by careful examination of check books and bank statements and by examining debtors at the first meeting of creditors, only to have the assets so discovered to be belatedly claimed as exempt, especially when trustees are paid only $60 for no asset cases. Debtor's counsel argued that the failure to claim the exemption was innocent oversight, perhaps due to the fact that the schedules were originally prepared in March when it was contemplated that the case might not be filed until June, when there would be no prepaid rent asset.

The facts, rationale and holding of *Michael* do not support the Debtor's defense. From the opinion in *Michael* it can be fairly inferred that the asset at issue, the debtors' home, had been fully and properly disclosed on Schedule A. Consequently in *Michael* the only late amendment was to Schedule C, to claim as exempt an asset that had already been disclosed on Schedule A. Indeed, it can also be fairy inferred from the facts reflected in the opinion that any trustee reviewing the original schedules filed by Michael would have concluded that the home

---

[2] *In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998).

1    disclosed on Schedule A was in fact the debtor's homestead.

2          This case, by contract, involves not only a late filed exemption claim, but also a

3    failure to disclose an asset[3] that the Debtors knew they owned when they filed their original

4    Schedules B and C, and that they only disclosed when examined by the Trustee. Nothing in

5    *Michael* compels the conclusion that a knowing failure to disclose an asset until after it is

6    discovered through the Trustee's investigation is not either bad faith nor prejudice to creditors,

7    or both; or that on such facts, there would be no grounds for denial of the late claimed

8    exemption of the previously undisclosed asset.

9          None of the other authorities cited by the Debtors compel a conclusion that a late

10   filed exemption must be allowed despite knowing concealment of the asset. In *Andermahr*, for

11   example, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") held that "Active concealment

12   of an asset no doubt requires denial of the exemption claim [citing *In re Doan*, 672 F.2d 831,

13   833 (11th Cir. 1982)], but the findings [in the *Andermahr* case] support at most a negligent

14   act."[4] In that case the asset, a tax refund for the calendar year preceding the bankruptcy filing

15   that was received by the trustee some six months post-petition and not originally claimed as

16   exempt, did not exist when the bankruptcy case was filed. Debtor sought permission to amend

17   his exemptions and the bankruptcy court denied the request to amend the claimed exemptions

18   when it denied debtor's request for turnover of the refund. However, the most the trial court

19   found was that the debtor "should have anticipated a possible refund and claimed it as exempt

20   initially."[5] Not only did the asset not exist at the time of filing, but it did not require any

21   investigation by the trustee to discover it, since the refund was actually sent by the IRS directly

22   to the trustee.

23

24

25   _____

26   [3] A credit for prepayment is an asset and is property of the estate. *In re Nichols*, 491 F.3d 987, 990 (9th Cir. 2007).

27   [4] *In re Andermahr*, 30 B.R. 532, 534 (9th Cir. BAP 1983).

28   [5] *Andermahr*, 30 B.R. at 533.

3

In *Nicholson*,[6] the debtors' original schedules disclosed the shares of ownership in a corporation but claimed they were worthless, and only after the trustee sought to sell them for $5000 did the debtors amend their schedules to reflect their value at $22,000 and to claim them as exempt. And after noting that "concealment of assets is the usual ground for a finding of 'bad faith,'"[7] the BAP opinion also held that on remand the bankruptcy court could find bad faith if "the debtors did not honestly believe, as they had testified, that the shares were worthless."[8] And in *Glimcher*[9] where the asset was not disclosed, this Court noted that intentional concealment can be inferred from the nondisclosure and that bad faith can be found on the basis of that inference, absent an innocent explanation.

Here, both the intentional concealment and the bad faith can be inferred from all the facts and circumstances, and no evidentiary hearing is necessary. This is so for at least two reasons. First, the only attempted explanation or justification for the failure to list the asset on Schedule B was that the schedules were prepared some two months prior to the actual filing. But this is no justification or excuse at all, or at least not one that could be credited by any fact finder. It means that the schedules were prepared in the same month that the asset was intentionally created – in March, when the rent was prepaid for April, May and June. It is not conceivable that any fact finder could find innocent oversight in the failure to identify an asset that was intentionally created in the same month that the schedules were prepared, and most assuredly not when the asset is an extremely rare type of asset for any potential debtor to own and when it probably would never exist but for the contemplation of filing bankruptcy.

Second, the prepayment of rent was indisputably exemption planning, the conversion of nonexempt assets, such as cash, into an exempt form. Although exemption

---

[6] *In re Nicholson*, 435 B.R. 622 (9th Cir. BAP 2010).

[7] *Id*. at 634.

[8] *Id*. at 634-35.

[9] *In re Glimcher*, 458 B.R. 544, 548 (Bankr. D. Ariz. 2011).

4

planning may be permissible in this Circuit,[10] to be safe from denial of discharge or attack as a fraudulent transfer (or, after enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, from limitation pursuant to Bankruptcy Code § 522(o)[11]), it must be done without any of the badges of fraud, the most significant of which involve concealment.[12] In short, the usual bankruptcy duty of full disclosure is heightened in the circumstance of exemption planning.  In the context of exemption planning, no finder of fact could find that a failure to disclose the artificially created exempt asset was innocent or negligent, and certainly not when orchestrated by an attorney, as in this case.

For these reasons, the Trustee's objection to the exemption claimed for $900 of prepaid rent is sustained, and the Debtor's objection and claim for sanctions against the Trustee are denied.

DATED AND SIGNED ABOVE

---

[10] *See Gill v. Stern (In re Stern),* 345 F.3d 1036 (9th Cir. 2003); *Wudrick v. Clements*, 451 F.2d 988, 989 (9th Cir. 1971).

[11] 11 U.S.C § 522(o).

[12] *In re Crater*, 286 B.R. 756, 764 (Bankr. D. Ariz. 2002).

5